**F I L E D**

**UNITED STATES COURT OF APPEALS**

May 17, 2007

**TENTH CIRCUIT**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff-Appellee,<br><br>v.<br><br>VAUDA VIRGLE SHIPP, JR.,<br><br>  Defendant-Appellant. | No. 06-5056<br>(D.C. No. 04-CR-214-HDC)<br>(N. Dist. Okla.) |

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge, **SEYMOUR**, Circuit Judge, and **ROBINSON**,[**] District Judge.

Vauda Virgle Shipp, Jr. was convicted of being a felon in possession of a

firearm and sentenced to 188 months imprisonment. He appeals his conviction,

the district court's denial of his motion for a new trial, and his sentence. We

affirm.

Cheryl Ann Shipp filed a protective order against her husband, Mr. Shipp.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]Honorable Julie A. Robinson, United States District Judge, United States District Court for the District of Kansas, sitting by designation.

She also informed the police that firearms were stored in a gun cabinet in the bedroom of their shared home and provided them with consent to enter the house and retrieve the firearms. The next day, Deputy James Yeager of the Mayes County Sheriff's office arrived at the Shipp house and encountered Mr. Shipp. He informed Mr. Shipp of the protective order and his intent to search the home for weapons. Mr. Shipp led the deputy to the firearms in the bedroom. He was arrested and charged with one count of being a felon in possession of a firearm.

At trial, Ms. Shipp testified she bought the guns for her husband and recounted Mr. Shipp's testimony from a state civil proceeding acknowledging he used the guns for hunting. Mr. Shipp's son-in-law testified Mr. Shipp handed him one of the firearms when he was visiting the Shipp home in 2003. Mr. Shipp subsequently objected to the inclusion of a jury instruction entitled "OWNERSHIP IMMATERIAL." *See* Rec., vol. I, doc. 62 at 18 ("The ownership of any firearm alleged to have been possessed by defendant is not to be considered by you. The ownership of such a firearm is immaterial."). The court overruled this objection, the instruction was given, and the jury returned a guilty verdict.

The presentence report (PSR) initially assigned Mr. Shipp an offense level of 14. Under the Armed Career Criminal provision, however, the offense level was enhanced to 33. *See* U.S.S.G. § 4B1.4(b)(3)(B). To support this enhancement, the PSR cited three prior felony convictions, including a 1987

escape conviction for failing to return to a detention facility after overstaying an official pass. With a criminal history category of IV, the suggested sentencing range was 188 to 235 months.

Mr. Shipp then filed a motion alleging his attorney was ineffective for failing to adequately investigate, and requesting a new trial on the basis of new evidence. Mr. Shipp's trial attorneys withdrew and new counsel was appointed. At sentencing, Mr. Shipp's new attorney disputed the PSR's classification of his escape conviction as a violent felony, and requested a new trial, based on newly discovered evidence and ineffective assistance of trial counsel. The district court denied these requests and sentenced Mr. Shipp to 188 months imprisonment. On appeal, Mr. Shipp contends the search of his home was unlawful; the evidence presented was insufficient to support his conviction; and the court erred by instructing the jury that ownership of the firearms was immaterial, by denying his motion for new trial, and in sentencing him as an Armed Career Criminal. We address each argument in turn.

Mr. Shipp argues for the first time on appeal that the search of his home was unlawful because he was present and did not consent. "Where no objection is made at trial to the admission of evidence, the alleged error is not preserved for appellate review unless its admission constitutes plain error." *United States v. Brown*, 540 F.2d 1048, 1056 (10th Cir. 1976). Mr. Shipp relies on *Georgia v. Randolph*, 547 U.S. 103 (2006), where the Court held "a warrantless search of a

shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Id.* at 1526. Here, Deputy Yeager briefly described his encounter with Mr. Shipp prior to entering the house. His limited testimony indicates that Mr. Shipp did in fact consent to the search.[***] Neither party produced evidence at trial that would have led the district court to question the provision of consent, *see United States v. Baker*, 638 F.2d 198, 203 (10th Cir. 1980), and we therefore cannot conclude the court committed plain error. *See United States v. Mitchell*, 783 F.2d 971, 977 (10th Cir. 1986).

"We review de novo whether the prosecution presented sufficient evidence to support a conviction." *United States v. Avery*, 295 F.3d 1158, 1177 (10th Cir. 2002). We examine evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government. *United States v. Serrata*, 425 F.3d 886, 895 (10th Cir. 2005). "We will not re-weigh the evidence or assess the credibility of witnesses," *id.,* and will not overturn a conviction "unless no rational trier of fact could have reached the disputed verdict." *United States v. Wilson*, 182 F.3d 737, 742 (10th Cir. 1999). To establish a violation of 18 U.S.C. § 922(g)(1), the government must prove "(1) that the defendant was previously

---

[***] *See* Rec., vol. VI at 44 ("[Government]: Did you ask Mr. Shipp where the guns were located? [Deputy Yeager]: Yes, I did. [Government]: And did he show you where they were located? [Deputy Yeager]: Yes, sir."); *id.* at 49 ("[Deputy Yeager]: Mr. Shipp, he took me to [the firearms] and pointed to them.").

convicted of a felony; (2) that the defendant thereafter knowingly possessed a firearm or ammunition; and (3) that the possession was in or affecting interstate commerce." *United States v. Ledford*, 443 F.3d 702, 713 (10th Cir. 2005).

The first and third elements are not disputed here. Instead, Mr. Shipp impugns the motives of his wife and the credibility of his son-in-law's testimony in an effort to undermine the knowing possession element of the crime. It is not within our province to assess the credibility of witnesses. Moreover, Officer Yeager's testimony that Mr. Shipp directed him to the location of the firearms also supports the knowing possession element. *See Ledford*, 443 F.3d at 714 ("To sustain a conviction for constructive possession, the government must present evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon."). Consequently, we conclude there was sufficient evidence to support the conviction.

Mr. Shipp also contends the district court erred in instructing the jury not to consider ownership of the firearms. "This court reviews a district court's decision to give a particular jury instruction for an abuse of discretion and considers the instructions as a whole *de novo* to determine whether they accurately informed the jury of the governing law." *United States v. Cota-Meza*, 367 F.3d 1218, 1221 (10th Cir. 2004). In *United States v. Al-Rekabi*, 454 F.3d 1113, 1120 (10th Cir. 2006), we held that "[a] knowing ability to control is all constructive possession requires, even in a joint occupancy situation." Ms. Shipp's alleged ownership of

the firearms does not influence this crucial inquiry into whether Mr. Shipp had the knowing ability to control the firearms in his home. *See United States v. Mains*, 33 F.3d 1222, 1228 (10th Cir. 1994) ("Section 922(g)(1) requires possession, not ownership of the gun."); *United States v. Johnson*, 683 F.2d 1187,1188 (8th Cir. 1982) (The felon in possession "statute . . . prohibits the knowing possession of firearms. Ownership is immaterial."). Thus, the instruction accurately informed the jury of the governing law.

Mr. Shipp's motion for a new trial alleged newly discovered evidence, namely police documents he alleges reflect inconsistencies with provided testimony. We review a district court's denial of a motion for a new trial for abuse of discretion. *United States v. LaVallee*, 439 F.3d 670, 700 (10th Cir. 2006). Our five part test to determine whether newly discovered evidence warrants a new trial begins with the requirement that "the evidence was discovered after trial." *Id.* Here, the district court recognized that the evidence "w[as] mentioned at the trial." Rec., vol. VII at 6. Accordingly, the district court did not abuse its discretion by denying the new trial request on this ground.

Mr. Shipp also sought a new trial on the grounds that his counsel was ineffective for failing to investigate, subpoena, and present relevant witnesses and records. A "motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict . . . ." FED.R.CRIM.P. 33(b)(2). The jury returned its verdict on September 14, 2005,

and Mr. Shipp submitted his motion on December 1. To be timely, therefore, Mr. Shipp's ineffectiveness claim must instead be couched as newly discovered evidence, which has a longer filing period. *See* FED. R. CRIM. P. 33(b)(1) (latest filing date for newly discovered evidence is three years after verdict). "Ineffective assistance of counsel may not serve as the basis for a motion for a new trial on the ground of newly discovered evidence under Rule 33 where the facts alleged in support of the motion were within the defendant's knowledge at the time of trial." *United States v. Miller*, 869 F.2d 1418, 1421 (10th Cir. 1989). Mr. Shipp was aware at the time of trial that his attorneys were not investigating and preparing to call witnesses. Consequently, the district court did not err in denying his motion for a new trial on ineffectiveness grounds.

Finally, Mr. Shipp objected to the application of the Armed Career Criminal provision. He contends the district court erred by classifying his escape charge as a violent felony and by failing to submit to the jury the question of whether his escape crime was a "violent" offense. We need not linger on Mr. Shipp's claim that the jury, not the district court, was the proper arbiter of whether his escape conviction was a crime of violence. In *United States v. Moore,* 401 F.3d 1220, 1226 (10th Cir. 2005), we clearly rejected this argument and "conclude[d] that the government need not . . . prove to a jury that a defendant's prior conviction constitutes a 'violent felony' under § 924(e)."

Mr. Shipp also asserts his escape crime did not involve actual or potential

violence, stating he "simply failed to return to the Lexington Assessment Center after being permitted to leave on an official pass." Aplt. Br. at 19. We review the district court's application of the 18 U.S.C. § 924(e) enhancement *de novo*. *Moore,* 401 F.3d at 1226. A violent offense in this context "involves conduct that presents a serious risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii); U.S.S.G. § 4B1.2(a)(2). In *United States v. Moudy*, 132 F.3d 618, 620 (10th Cir. 1998), we said the "reasons . . . for holding escape to be a crime of violence apply to *all* escapes, whether or not violence was actually involved." *See United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994) ("[E]ven in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody."). Even assuming Mr. Shipp's escape was non-violent, we attribute a potential for violence to all escapes as outlined in *Gosling*. The district court did not err in determining Mr. Shipp's escape conviction was a crime of violence.

We **AFFIRM**.

ENTERED FOR THE COURT


Stephanie K. Seymour
Circuit Judge