**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 4, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GILBERT HERRERA,

Defendant-Appellant.

No. 05-2219

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-04-1348-MCA)**

---

Robert J. Gorence, Gorence & Oliveros, P.C., Albuquerque, New Mexico, for Defendant-Appellant.

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, and Laura Fashing, Assistant United States Attorney, with him on the brief), Office of the United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **HENRY**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Gilbert Herrera was convicted of conspiring to traffic cocaine after a four-day jury trial. Four months after his conviction, Herrera filed a motion for a new

trial claiming newly discovered evidence would show that he had not been competent during trial. The motion contended that the cognitive effects of acute diabetes combined with a severe staph infection which was diagnosed only after trial impaired Herrera's ability to interact with counsel at trial. The district court denied the motion without the benefit of an evidentiary hearing on competency, concluding that no bona fide doubt existed that Herrera had in fact been competent at trial.

On appeal, we must decide whether the district court erred in denying the motion for new trial without first conducting an evidentiary hearing. We hold that the district court did not abuse its discretion, and therefore AFFIRM.

## I. Background

After nearly a four-year investigation conducted by the Federal Bureau of Investigation, the government charged Gilbert Herrera, along with his brother-in-law, Louis Chavez, with conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846. Herrera and Chavez were tried together before a jury beginning on November 9, 2004. After several witnesses testified against the two, including a Herrera family friend, a jury found them guilty of the charges on November 15, 2004.

Four months later Herrera filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure on the basis of newly discovered evidence that he was not competent to stand trial. Specifically, Herrera claimed

2

he was diagnosed with adult diabetes on November 16, 2004, the day after his trial ended. Herrera contended that the previously undiagnosed and untreated diabetes coupled with a staph infection afflicting his lower body and extremities during trial rendered him unable to understand the legal proceedings against him or to ably assist his attorney.

A summary of medical records from his detention facility indicates that Herrera suffered from and was treated for a highly contagious and difficult to treat bacterial infection in the months leading up to trial. On September 7, 2004, Herrera complained of a foot wound, which was treated with an anti-fungal cream and antibiotic. Then on October 14, 2004, Herrera complained of foot pain and requested inserts for his shoes. Medical personnel again gave him an anti-fungal cream on November 3, 2004 for a bad rash on his legs. Nothing in the record indicates Herrera received any medications that could have impaired his cognitive abilities.

On the day before his trial began, Herrera made a sick call complaining, "I am bleeding all over the place. I need to be seen ASAP. I will be in trial tomorrow on 11/15/04. And I will advise my lawyer Robert Gorence about this problem. I am in Bad Pain. I need to be seen when I get back." I Aplt. App. at 39. On November 16, 2004, the day after the trial concluded, medical personnel noted Herrera's complaint of "red spots on arms and buttocks" and observed that

3

the skin on his left forearm and buttocks was "red, swollen and tender." *Id.* He was administered an antibiotic for the skin infection.

At the November 16 visit, a physician for the detention facility formally diagnosed Herrera with diabetes and prescribed a diabetic medication and diet to control his blood-glucose levels. Before that date, the summary indicates that medical personnel had begun to administer tests to determine Herrera's blood-glucose levels, and diabetes was listed as a potential diagnosis as early as August 18, 2004. The tests indicated that Herrera's blood sugar level in the four months preceding trial averaged 234, where the normal range is 70-109. Before his November 16 diagnosis, Herrera received no treatment for his diabetes.

In an affidavit supporting his Rule 33 motion, Herrera claimed he felt "faint, nauseous, and for the most part delirious" at trial. *Id.* at 43. He argues that his undiagnosed diabetes exacerbated the problems. For example, he claims he ate many candy bars leading up to his trial because of stress.

In addition, Herrera affirmed,

[T]he sores on my body were so painful that I had trouble concentrating on issues during the trial to any degree whatsoever. . . . As much as I tried to overcome my medical problems during trial, I did not have the ability to understand the evidence presented at trial, nor did I have the ability to understand the legal issues presented at trial. . . . I now understand that I was not capable of assisting my attorney in my defense during the trial.

*Id.*

4

Herrera's defense counsel also included an affidavit in support of the Rule 33 motion. Counsel stated that Herrera reported various complaints about his health. Counsel further observed that Herrera seemed "lackadaisical and different" at the trial, and that he had a "very difficult time communicating with Mr. Herrera during the trial because of his listlessness and inability to concentrate." *Id.* at 55–56. In hindsight, counsel believed that Herrera was not capable of assisting him effectively because of the cognitive deficits associated with Herrera's medical condition during trial.

Herrera also provided the curriculum vitae of David H. Goldstein, M.D., a physician and medical consultant. Although Dr. Goldstein did not personally examine Herrera, counsel indicated that the doctor could opine generally to the cognitive manifestations of the onset of acute diabetes, magnified by a staph infection. According to Herrera's motion papers, the combination of medical conditions could cause "cognitive deficits related to a lack of concentration and diminished mental functioning." *Id*. at 53.

The government opposed the motion claiming that Herrera exhibited no irrational or bizarre demeanor or any signs of physical illness during the trial. The government noted that Herrera and his counsel failed to communicate his medical condition to the district court. Furthermore, the government argued that the district court had no jurisdiction over the motion since Herrera's complaint did not involve newly discovered evidence.

5

The district court denied Herrera's motion for a new trial without holding an evidentiary hearing. Herrera was sentenced to prison for 120 months followed by a supervised release term of eight years.

## II.  Analysis

Herrera's central claim is that the district court erred in denying his motion for a new trial on the basis of newly discovered evidence without first conducting an evidentiary hearing. Herrera contends that his post-trial diagnosis of acute adult diabetes constitutes newly discovered evidence of his incompetence to stand trial.  He also claims the district court should have granted a mistrial after it admitted hearsay evidence in violation of his Sixth Amendment rights.

### A.    Motion to Grant a New Trial

Rule 33 authorizes trial courts to grant new trials "if the interest of justice so requires." *Fed. R. Crim. P. 33(a).* A motion for a new trial is not regarded with favor and is only issued with great caution. *United States v. Trujillo*, 136 F.3d 1388, 1394 (10th Cir. 1998). We ordinarily review the denial of a new trial for abuse of discretion. *United States v. Quintanilla,* 193 F.3d 1139, 1146 (10th Cir. 1999). "A decision is an abuse of discretion only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Combs*, 267 F.3d 1167, 1176 (10th Cir. 2001) (internal quotes omitted).

Motions for new trial filed more than seven days after a verdict or a finding of guilt must be grounded on newly discovered evidence. *Fed. R. Crim. P. 33(b).*

Since Herrera filed this motion four months after trial, newly discovered evidence is the only ground available to Herrera for a new trial. For Herrera to prevail on a motion for a new trial based on newly discovered evidence, he must show that:

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

*United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997) (internal quotes omitted).

In this case, Herrera's newly discovered evidence does not bear on the probability of his acquittal, but rather on his *competence* to stand trial. "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975). Thus, "where the newly discovered evidence pertains not to the defendant's guilt, but to his competency to stand trial," the relevant inquiry is whether the new evidence indicates that the defendant did not have "'sufficient . . . [present] ability to consult with his lawyer with a reasonable degree of rational understanding' and 'rational as well as factual understanding of the proceedings against him.'" *United States v. McCarthy*, 54 F.3d 51, 55 (2d. Cir. 1995) (quoting *Dusky v. United States*, 362

7

U.S. 402, 402 (1960)); *see also Maynard v. Boone*, 468 F.3d 665, 676 (10th Cir. 2006).

The district court denied the motion for two reasons: (1) the evidence was not newly discovered; and (2) Herrera did not raise a bona fide doubt he was incompetent during trial. We agree with both conclusions.

*1. The Evidence Was Not Newly Discovered.*

The district court denied the Rule 33 motion on the ground that Herrera failed to show that the evidence in question was "newly discovered" after trial. While Herrera's specific diagnosis of diabetes was made a day or two after trial, the district court concluded that the symptoms or physical manifestations of the illness, rather than its formal diagnosis by a physician, formed the basis for his competency claim. The district court held that such symptoms or physical manifestations do not qualify as "newly discovered evidence" for purposes of Rule 33.

According to the record, Herrera was aware of the symptoms of his medical condition prior to trial. The district court found that Herrera had consulted a doctor before trial and had advised his trial counsel of various health problems both before and during trial. Indeed, doctors suspected Herrera suffered from diabetes as early as August of 2004, well before trial. What Herrera did not know was the formal *diagnosis* of his diabetes. And, in at least one post-trial medical

8

opinion, a doctor suggested to trial counsel that the untreated diabetes coupled with his staph infection *could* have some effect on a person's cognitive abilities.

Nonetheless, the district court was satisfied that Herrera (while not knowing the precise diagnosis) was well-aware during trial that he was experiencing certain physical symptoms. Those symptoms were communicated to his lawyer, who concluded they were not serious enough to advise the court. The district court, moreover, saw nothing in Herrera's demeanor and behavior at trial to suggest that he could not consult with his trial counsel or understand the proceedings against him. In these circumstances, the diagnosis of his medical condition does not constitute new evidence justifying a new trial.

This is not to say that a post-trial diagnosis of a serious medical condition cannot satisfy Rule 33. Several cases suggest that diagnoses made available only after trial could in some circumstances form a basis for a new trial, even where the symptoms were known or knowable during trial. *See, e.g.*, *Nagell v. United States,* 354 F.2d 441 (5th Cir. 1966) (holding that a previously unknown brain injury the defendant suffered more than ten years prior is newly discovered evidence of his competence even though defendant knew about the injury); *United States v. Massa*, 804 F.2d 1020, 1022–23 (8th Cir. 1986) (disagreeing with a district court holding that a post-trial psychiatric assessment could not be newly discovered evidence because the factual circumstances supporting the evaluation were known to defendant at trial); *United States v. Escobar*, 68 F.App'x. 836 (9th

9

Cir. 2003) (finding that a post-trial re-evaluation of defendant's intelligence could be newly discovered evidence); *Smith v. United States*, 1993 U.S. App. LEXIS 14520 (7th Cir. June 14, 1993) (deciding that an after trial diagnosis of "possible paranoid schizophrenia" could be newly discovered evidence, even though motion was rejected on other grounds).

These cases, of course, involve serious mental conditions and not physical infirmities that *might* affect the defendant's ability to assist counsel. Suffice it to say that the evidence must firmly point to a serious mental or physical condition that affected the competency of the defendant *at trial* to assist in his defense.

Here, given (1) Herrera's knowledge of his physical symptoms prior to or during trial, and (2) the lack of any suggestion at trial from counsel or the defendant that he could not understand the proceedings, the district court correctly concluded that the post-trial diagnosis that Herrera suffered from diabetes and a staph infection did not qualify as newly discovered evidence under Rule 33.

*2. Herrera Did Not Raise a Bona Fide Doubt of Competency at Trial.*

Even if the evidence were newly discovered, the district court also found that the totality of the circumstances "do[es] not raise a *bona fide* doubt or support a reasonable inference that [Herrera] was not competent to stand trial" in November 2004. I Aplt. App. at 82. Herrera contends that the district court erred

10

in reaching this conclusion without the benefit of an evidentiary hearing. We disagree.

A claim complaining of "a trial court's alleged failure to hold a competency hearing" is a procedural due process claim. *McGregor v. Gibson*, 248 F.3d 946, 952 (10th Cir. 2001). A violation of a procedural competency claim occurs when a "reasonable judge should have had a bona fide doubt as to [the defendant's] competence at the time of trial" and no further competency inquiry was afforded the defendant. *Id.* at 954; *see also Pate v. Robinson*, 383 U.S. 375, 385 (1966).[1] Accordingly, Herrera would have been entitled to an evidentiary hearing on his motion for a new trial if his motion papers raised a "bona fide doubt" about his competence at the time of trial. The district court concluded that Herrera failed to show a contemporaneous inability to communicate with counsel at trial.

The well-settled legal standard for assessing competency is that the defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and have] a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402. In

---

[1] Herrera also raises a substantive due process claim on appeal. "[A] substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent." *McGregor*, 248 F.3d at 952. Since we conclude no bona fide doubt exists that Herrera was not incompetent at trial, he likewise fails to make a substantive due process claim. *See Walker v. Gibson*, 228 F.3d 1217, 1230 (10th Cir. 2000) (Where a petitioner cannot show a bona fide doubt as to his competency, "he cannot meet the more stringent substantive due process competency standard.").

11

determining whether "bona fide doubt" of competence exists, courts may look to the defendant's "irrational behavior," "demeanor at trial," "any prior medical opinion[,]" "evidence of mental illness[,]" and "any representations of defense counsel[.]" *McGregor,* 248 F.3d at 954–55. "We examine the totality of the circumstances . . . . The question is . . . whether the trial court 'failed to give proper weight to the information suggesting incompetence which came to light during trial.'" *Id.* at 955 (quoting *Drope*, 420 U.S. at 179).

With these standards in mind, we turn to the district court's determination that Herrera failed to raise a "bona fide doubt" as to his competence at trial. The district court first found the documents supporting his motion for a new trial were not credible. For example, Herrera's affidavit claimed that he felt "faint, nauseous, and . . . delirious" during the trial, but neither Herrera nor his counsel alerted the court to any health concerns during trial nor were these conditions reflected in the summary of his medical records. In fact, Herrera specifically asserted his right to a speedy trial and did not seek a continuance of his trial based on his medical condition. Herrera failed to offer any explanation as to why he was unable to communicate these health complaints to his counsel or the court.

Furthermore, we find no fault with the district court's assessment of Herrera's demeanor at trial. The district court did not notice anything unusual in Herrera's demeanor or behavior during trial, which Herrera concedes on appeal. The district court observed no signs that Herrera was inattentive, bleeding, faint,

12

nauseous, delirious, lackadaisical, or otherwise in distress. On the other hand, the court found Herrera appeared to communicate with his counsel and attend to the proceedings in a normal manner during the entire trial. In addition, there was nothing out of the ordinary or unusually strenuous in the proceeding of the trial. The district court allowed breaks at regular intervals and Herrera enjoyed several days off trial for a holiday and weekend.

Nor does the proffer of Dr. Goldstein warrant a different conclusion. Dr. Goldstein's curriculum vitae indicates he is board-certified in pulmonary and internal medicine, but nothing suggests he has medical expertise in diabetes or mental health in general. Moreover, Dr. Goldstein never personally examined Herrera, but intended to present testimony of general conclusions about possible cognitive deficits associated with diabetes and a staph infection. The medical personnel who actually did examine Herrera prior to trial made no note of any mental infirmities or cognitive deficiencies in his medical records.

Finally, we consider trial counsel's affidavit describing Herrera's medical conditions during trial and his post hoc determination that Herrera was unable to assist counsel effectively during trial. Understandably, "defense counsel is often in the best position to determine whether a defendant's competency is questionable." *McGregor*, 248 F.3d at 960. Nevertheless, "the concerns of counsel alone are insufficient to establish doubt of a defendant's competency." *Id.* at 959–60. While important evidence, those concerns must be weighed against

13

the ability of the district court to assess the behavior of the defendant at trial. When coupled with the fact that no doctor opined that Herrera was incompetent before or even during trial, we see no clear error in the district court's ruling. Indeed, the behavior of Herrera was not significant enough for experienced trial counsel to advise the court during trial proceedings of any inability to effectively represent his client. Nor has counsel pointed to anything specific at trial that Herrera did not understand or could not review, only that the confluence of events raised concerns about Herrera's condition. *See Walker v. AG*, 167 F.3d 1339, 1346–47 (10th Cir. 1999) (rejecting petitioner's procedural incompetency claim, in part because trial counsel never raised the issue of petitioner's competency at trial).

In sum, we do not find the district court "ignored evidence that, viewed objectively, raised a bona fide doubt as to [defendant's] competency." *Clayton v. Gibson*, 199 F.3d 1162, 1171 (10th Cir. 1999) (internal quote omitted). Even if Herrera's post-trial diagnosis with diabetes is properly "newly discovered evidence" under Rule 33, it would not alter the district court's calculation that no bona fide doubt existed as to his competency.[2]

---

[2] For the same reasons, the district court did not err by failing to order a competency hearing under 18 U.S.C. § 4241(a) (district court may order a competency hearing if given "reasonable cause" to doubt defendant's competence).

Accordingly, the district court did not abuse its discretion in denying Herrera's motion for a new trial without the benefit of an evidentiary hearing on competency.

**B.     Motion to Grant a Mistrial**

At trial, a government agent offered limited testimony of information he obtained by listening to radio surveillance during a controlled narcotics buy. The testimony placed Herrera at the scene of the buy. Herrera contends that the district court erred by denying his motion to grant a mistrial after the court allowed this hearsay testimony in violation of his Sixth Amendment right to confront his accusers. This claim is the same argument made by a co-defendant in *United States v. Chavez*, 05-2209.

In *Chavez*, we concluded that the admission of the evidence was harmless error since (1) substantial eyewitness evidence at trial disclosed that the defendants, including Herrera, dealt drugs; (2) the FBI captured many of the transactions on tape; (3) the testimony was of limited value to the case as a whole in light of the eyewitness testimony; and (4) the trial court provided a curative instruction immediately following the hearsay testimony. For the same reasons, we agree that any error was harmless as to Herrera.

Accordingly, we incorporate our holding in *Chavez* on this issue and affirm the district court's denial of the motion for mistrial.

15

### III. Conclusion

For the foregoing reasons, we AFFIRM Herrera's conviction and the denial of his motion for a new trial.